STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

**13-1187**

**STATE OF LOUISIANA**

**VERSUS**

**JOHN WESLEY BILLIOT**

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 07597-11
HONORABLE G. MICHAEL CANADAY, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

**JIMMIE C. PETERS**
**JUDGE**

\*\*\*\*\*\*\*\*\*\*

Court composed of Jimmie C. Peters, Billy Howard Ezell, and Phyllis M. Keaty, Judges.

**AFFIRMED.**

**John F. DeRosier**
**District Attorney**
**Karen C. McLellan**
**Assistant District Attorney**
**Fourteenth Judicial District**
**P. O. Box 3206**
**Lake Charles, LA 70602-3206**
**(337) 437-3400**
**COUNSEL FOR APPELLEE:**
    **State of Louisiana**

**Paula C. Marx**
**Louisiana Appellate Project**
**P. O. Box 80006**
**Lafayette, LA 70598-0006**
**(337) 991-9757**
**COUNSEL FOR DEFENDANT/APPELLANT:**
**John Wesley Billiot**

**John Wesley Billiot**
**Louisiana State Penitentiary**
**Camp C, Tiger 4/R**
**Angola, LA 70712**
**IN PROPER PERSON**

**PETERS, J.**

The defendant, John Wesley Billiot, entered a no-contest plea to the offense of aggravated battery, a violation of La.R.S. 14:34, and, thereafter, the trial court sentenced him to serve ten years at hard labor with the sentence to run consecutive to other sentences he received for felony convictions to which he entered no-contest pleas on the same day. After the trial court rejected his motion to reconsider his sentence, the defendant appealed. For the following reasons, we affirm the convictions and sentence in all respects.

## DISCUSSION OF THE RECORD

The matter before us is a companion case to two other appeals now before us involving basically the same issues. However, the appeals are not consolidated as they each arise from different criminal acts. The connecting link is the fact that the three pleas arise from the same plea negotiations with the State of Louisiana (state).

On March 11, 2011, the state charged the defendant by grand jury indictment with attempted second degree murder, a violation of La.R.S. 14:30.1 and La.R.S. 14:27. He entered a not-guilty plea to the charge on April 11, 2011. On January 28, 2013, the state amended the bill of indictment to charge the defendant with aggravated battery, and, on the same day the defendant entered a no-contest plea to that charge. On April 24, 2013, the trial court sentenced the defendant to serve ten years at hard labor and ordered that the sentence run consecutive to the sentences imposed on him for other felonies that the defendant had entered no-contest pleas to that same day: two counts of armed robbery, violations of La.R.S. 14:64; two counts of aggravated battery, violations of La.R.S. 14:34; two counts of armed robbery with a firearm, violations of La.R.S. 14:64.3;

and one count of obscenity, a violation of La.R.S. 14:106.

At the time the defendant entered his plea to the charge now before us, the state provided the trial court with the factual basis in support of that charge. This factual basis established that on January 15, 2011, the defendant, the victim of the offense Alex Michael Cook, and a third person were traveling together in Calcasieu Parish, Louisiana. The defendant and the other man stopped in an empty field located off a state highway, removed Cook from the vehicle, and began hitting him in the face with an aluminum baseball bat. After severely beating Cook, the two men fled the scene, leaving the victim in the field. Cook was able to walk to Interstate 10, where drivers stopped to render aid and found him bleeding profusely. He was transported by ambulance to a local hospital for treatment of his injuries. As a result of the battery he received, Cook sustained a fractured mandible, fractured orbital, and numerous facial lacerations. He appeared to have been struck by the baseball bat at least thirty times.

On appeal, the defendant asserts that his sentence violates the terms of his plea agreement and that either the plea agreement should be enforced or he should be allowed to withdraw his no-contest plea. He also asserts that the trial court erred in failing to rule on his pro se motion to withdraw his plea.

### Assignment of Error Number One

As previously stated, on the day the defendant entered his no-contest plea to the charge in this matter, he entered additional no-contest pleas in two other pending matters involving seven additional felony counts. The end result of his pleas from a sentencing standpoint is as follows:

Trial Court Docket Number 07597-11 (the matter now before us)

2

Aggravated battery – ten years at hard labor to run consecutive to all of the other sentences. (The state had recommended a ten year hard labor sentence to run concurrent to the other sentences).

Trial Court Docket Number 07619-11

Armed robbery (two counts) – seventy years at hard labor on each count to run concurrently to each other and to be served without the benefit of parole, probation, or suspension of sentence. (The state had recommended fifteen years at hard labor without benefit of parole, probation, or suspension of sentence on each count to run concurrent to the other sentences).

Armed robbery with a firearm (two counts) – five years at hard labor to run concurrently with each other, but consecutively with the armed robbery sentences, and to be served without the benefit of parole, probation, or suspension of sentence. (The state had recommended five years at hard labor without benefit of parole, probation, or suspension of sentence on each count to run consecutive to the armed robbery sentences).

Aggravated battery (two counts) – five years at hard labor to run concurrently with each other and concurrently with the two armed robbery counts and the two armed robbery with a firearm counts. (The state had recommended ten years at hard labor on each count to run concurrent with the other sentences).

These offenses were committed on January 3, 2011, and involved victims different from the victim in the current matter.

Trial Court Docket Number 35370-11

Obscenity – three years at hard labor to run consecutively with the other sentences and a fine of $2,500.00. (The state had recommended three years at hard labor to run concurrent with the other sentences).

The defendant was originally charged with two counts of forcible rape, violations of La.R.S. 14:42.1; and four counts of tattooing and body piercing a minor without consent, violations of La.R.S. 14:93.2. The offenses occurred between November 1, 2010 and January 31, 2011, and involved a single victim who was thirteen years of age at the time of the offenses.

Additionally, as part of the plea agreement entered into between the state and the defendant, the state agreed not to pursue the defendant as a habitual offender and to recommend that the defendant receive a combined maximum

3

sentence of twenty-five years at hard labor without the benefit of probation, parole, or suspension of sentence for all of the convictions in the three docket numbers. At the hearing in which the defendant entered his plea, the state made the recommendations to the trial court as promised.

In this first assignment of error, the defendant asserts that despite the plea agreement, his pleas subjected him to sentences totaling eighty-eight years at hard labor instead of twenty-five years. He seeks either enforcement of the plea agreement or withdrawal of his plea.

> It is well settled that a plea agreement is a contract between the state and a criminal defendant. *State v. Davis*, 41,430 (La.App.2d Cir.11/1/06), 942 So.2d 652. . . . When a plea agreement is breached, the defendant has the option of specific performance or to withdraw the guilty plea. *State v. Byrnside*, 34,948 (La.App.2d Cir.8/22/01), 795 So.2d 435.

*State v. Bouwell*, 45,635, p. 7 (La.App. 2 Cir. 9/22/10), 48 So.3d 335, 340.

Moreover:

> This court has determined when a defendant should be allowed to withdraw his plea based on a mistaken belief regarding his sentence:

>> A guilty plea is invalid, or constitutionally infirm, when a defendant is induced to enter a plea of guilty by a plea bargain agreement, or what he reasonably or justifiably believes was a plea bargain agreement, and the terms of the bargain are not satisfied. *State v. Jones*, 546 So.2d 1343, 1346 (La.App. 3d Cir.1989); *State v. Taylor*, 535 So.2d 1229, 1230 (La.App. 3d Cir.1988), quoting *State v. Dixon*, 449 So.2d 463, 464 (La.1984). It is well settled that if a defendant's misunderstanding is not induced by or attributed to representations made by the district attorney or the trial court, there is no ground for invalidating the guilty plea. *State v. Malmay*, 548 So.2d 71, 73 (La.App. 3d Cir.1989); *State v. Jones*, *supra*.

>> It is also well settled that a misunderstanding between a defendant and counsel for defendant does not have the same implication as a breached plea bargain agreement, and this misunderstanding does not render the

4

> guilty plea invalid. *State v. Lockwood*, 399 So.2d 190
> (La.1981); *State v. Johnson*, 533 So.2d 1288, 1292
> (La.App. 3d Cir.1988), *writ denied*, 563 So.2d 873
> (La.1990). In the absence of fraud, intimidation, or
> incompetence of counsel, a guilty plea is not made less
> voluntary or less informed by the considered advice of
> counsel. See, *State v. Johnson*, 461 So.2d 1259, 1261
> (La.App. 1st Cir.1984).

*State v. Readoux*, 614 So.2d 175, 176-77 (La.App. 3 Cir.1993).

> Additionally, "[a] misunderstanding does not have the same
> implications that a breached plea bargain has," and a defendant may
> not withdraw his guilty plea simply because the sentence imposed was
> heavier than expected. *State v. Lockwood*, 399 So.2d 190, 193
> (La.1981); *see also State v. Robinson*, 311 So.2d 893 (La.1975).

*State v. Sigue*, 06-527, pp. 4-5 (La.App. 3 Cir. 9/27/06), 940 So.2d 812, 815 (alteration in original), *writ denied*, 06-2963 (La. 9/28/07), 964 So.2d 354.

During the plea colloquy, the trial court questioned the defendant extensively concerning the voluntary nature of his plea and his understanding of the role of the court in the plea agreement. Specifically, the trial court asked the defendant if the plea forms had been read to him and whether he felt comfortable with the information they contained; and the defendant responded affirmatively to both inquiries. It informed the defendant of the minimum and maximum sentences for aggravated battery; and the defendant stated that he understood that penalty range and that the sentences to be imposed could run concurrently or consecutively. The trial court further informed the defendant that it was not bound by the recommendations made to it by the state and that it could impose any sentence based on the circumstances and facts before it; and the defendant responded that he understood the trial court's position on the sentencing recommendation issue. Additionally, the trial court advised the defendant of his rights to trial, to confrontation, to compulsory process, against self-incrimination,

5

and to appeal the issue of guilt; and the defendant indicated he understood and waived those rights and stated that he had not been forced to enter his plea.

After finding the defendant's plea to be knowing and voluntary, the trial court ordered that a presentence investigation report be prepared. The trial court indicated the report was necessary to obtain information which would assist in determining whether or not it would deviate from the state's recommendations.

At sentencing, the trial court considered all of the offenses together and, after noting that the defendant was twenty-eight-years old, had completed the eighth grade, was a tattoo artist, and, after again being reminded that the state had recommended a maximum incarceration exposure of twenty-five years, stated the following concerning the sentences imposed:

> With regard to sentencing, the Court is required to review[] article 894.1. I do note that, after reviewing the pre-sentence investigation, Mr. Billiot was a third-time felony offender, thereby not being afforded opportunities for probation or parole. In addition, it says that the Court should impose a sentence of incarceration if any of the following occur:
>
> Is there an undue risk during a period of a suspended sentence or probation that he would commit another crime? As a third offender class, as well as the three offenses before me, the Court must answer that in the affirmative.
>
> Is he in need of correctional treatment or a custodial environment that can be provided most effectively by commitment to an institution? The actions that are before the Court show a pattern of violent behavior, so the court also answers that in the affirmative.
>
> Would a lesser sentence deprecate the seriousness of the defendant's crime? At this time I have five, basically, crimes of violence with a firearm enhancement and one crime against a juvenile before us. Anything less than incarceration would deprecate.
>
> In looking at the degree of sentence, we look at aggravating and mitigating circumstances. First, the offender's conduct during the commission of the offense manifested

6

deliberate cruelty to the victim. I have three different individuals in two dockets that were beaten with baseball bats and two of them at gunpoint based on the report and factual scenario.

Did the offender know or should have known that the victims were vulnerable? It is noted that under #7619 two of the individuals were young, 16 and 17 at the time of the offenses; also, under #35370-11, obviously, a minor involved with regard to that obscenity charge.

Has he been offered or given something of value for the commission? Again, the robbery in and of itself, taking clothes, cell phones, etcetera from the two individuals in #7619 clearly answers that in the affirmative.

Did he use his position or status to facilitate commissions of these offenses? Obviously, #35370-11, because of his relationship with the juvenile's mother, set up contact with that individual. And under #7619-11 used that same connection to set up some type of visit with those younger boys that were robbed previously mentioned under that docket.

Did he create a risk of great bodily harm to more than one person? Again, I have three counts of aggravated battery which in and of themselves create a risk of great bodily harm by definition.

Used threats of violence in the commission of the offense; I also answer that in the affirmative based on the crimes of violence that are before us.

Offense resulted in significant permanent injury; specifically, one of the aggravated batteries, #7597-11, nine months of medical treatment as indicated in the pre-sentence investigation, broken bones, nasal cavity, jaw, etcetera.

Offender used a dangerous weapon in the commission. It was a bat and a gun in #7619-11, a bat in #7597-11.

Multiple victims or incidents for which separate sentences are not imposed; significant charges were dropped in return for the plea that have not been made a part of any multiple offender bill.

It does appear that he has been involved in similar -- not necessarily similar offenses, but other criminal activity based on his third-time felony status.

While his other felonies basically were crimes of taking, he had a number of misdemeanor charges that shows crimes against the person which again show acts of violence.

Offense being a major economical -- again, #7597-11, the medical history as given by that victim in that matter shows significant economic. (sic)

Other aggravating circumstances, the problem I have is the defendant did not contest the facts; and yet, when giving a statement to the investigating officer, continued to deny being involved whatsoever in any of the situations when he gave a statement. I think that was in March of this year.

. . . .

That he did not participate. That was the one where the individuals gave false names later identified by the victim, and then the defendant didn't contest the facts in open court, yet in his statement he says he didn't have anything to do with that.

Indicated he was under the influence of alcohol in the #7597-11, and denied any inappropriate behavior in the #35370-11, saying he had parental permission.

In looking at mitigating circumstances, the defendant has no history of prior delinquency or criminal activity; that is more aggravating than mitigating.

Are circumstances of this conduct likely to reoccur? Again, more aggravating than mitigating based on history.

Is he likely to respond affirmatively to probationary treatment? Again, more aggravating than mitigating. He's had his opportunity at probation. He was revoked. He's had two opportunities at parole, both revoked.

If they were not mentioned, they were considered by the Court and deemed either insignificant or inapplicable to the instant offense.

At this time the defendant has pleaded guilty under docket #7619 to two counts of armed robbery, two counts of aggravated battery -- pleaded no contest, excuse me, and two counts of enhancement of armed robbery with a firearm.

The Court, after reviewing Mr. Billiot's history, as well as the facts associated with this, indicate that he appears to have significant issues with regard to violence toward other

8

individuals, and it is the Court's position with regard to the two counts of armed robbery he'll be ordered to serve 70 years at hard labor on each count. They will run concurrent with one another, and they will be served without benefit of probation, parole or suspension of sentence. As far as the recommendation of 15 years, that would be more appropriate for a first-time offender; and, again, not with one with the facts associated in this situation.

With regard to 14:64.3, there is a five-year enhancement associated with each one of those counts. They are to run consecutive to the armed robbery, but they will run concurrent with one another. So, at this point he has a total of 75 years at hard labor, all to be served without benefit of probation, parole or suspension of sentence.

Under the same docket with two counts of aggravated battery, it is the Court's position and, again, it's based on the degree of injury and such that he would be ordered to serve five years at hard labor on each count. They will run concurrent with one another and concurrent with the armed robbery and armed robbery with a firearm enhancement. They are subject -- they are with benefit. At this point he would be ordered to serve 75 years without benefit and five years with benefit total under that docket of #7619-11.

With regard to #7597-11, aggravated battery, one count, degree of injuries, involvement in that matter, it's the Court's position that he would be ordered to serve ten years at hard labor. That is to be consecutive to any other time he would be required to serve. He is with benefit on that sentence.

Under #35307-11 the defendant, again, the factual circumstances are significantly heinous in that matter, and he'll be ordered to serve three at hard labor, again consecutive to any other sentence he is serving, and ordered to pay a fine as mandated by statute of $2,500.

In total he will have 75 years at hard labor without benefit of probation, parole or suspension of sentence. He will have 15 years at hard labor with benefit for a total of 90 years at hard labor.

It is the Court's position, Mr. Billiot, that I don't see any redeeming attributes in your actions, both historically or with regard to this matter; and it's the Court's position that you will basically serve out the balance of your life incarcerated. The crimes of violence are designated under diminution at 85%, three days for 17, which means you will serve somewhere

9

between -- I would say around 85 years with regard to those charges. On the obscenity 35 for 30 computation, not designated as a sex offense or crime of violence, approximately 15 months for that.

There was no enhancement under 15:529.1, habitual offender, or 893.3; but this was enhancement under 64.3 as mentioned under the firearms enhancement for armed robbery.

Prospective release date, as indicated, probably somewhere between around 85 years. Again, I would have to defer to the Department of Corrections to make the actual computation because a third-time offender, I don't believe you're eligible for parole. However, I again defer to the Department of Corrections, but obviously some of the offenses are without benefit and would have to be considered under that.

. . . .

There is other legislative and jurisprudential concerns, and they will be applied by the Department of Corrections as they see fit. You are to get credit for time served for any time you have been incarcerated under these three dockets.

The defendant argues that the voluntariness of his plea must be questioned given that the length of the combined sentences is more than three times the combined maximum sentence outlined in the plea. While acknowledging that the trial court informed him it was not bound by the state's recommendation, the defendant argues that because the trial court gave no indication it would reject the recommendation and triple the incarceration exposure, he was justified in believing that, at the worst, he would be sentenced in a range slightly greater than the recommended twenty-five years. Thus, he concludes, this court should either enforce the plea agreement or find that no agreement existed and allow him to withdraw his plea.

On the other hand, the state argues that it fulfilled its part of the plea agreement, and there exists no evidence to suggest that it made any misrepresentations to the defendant. The state notes that when the trial court

informed the defendant that it was not bound by the sentencing recommendation, the defendant confirmed that he understood that statement and made no attempt to withdraw his plea. Thus, there was no breach of promise by either the state or the trial court.

We first note that there clearly existed a plea agreement between the state and the defendant and that the trial court was not a party to that agreement. However, with regard to this particular charge, the trial court did sentence the defendant to the recommended ten-year hard-labor sentence. What the trial court did not do is accept the state's recommendation concerning running this sentence concurrently with the sentences for the other charges. Still, this was not a predetermined sentence, and it is recognized "that the sentencing discretion of the trial judge cannot be limited by a sentence recommended by both the State and the defendant. The trial judge may accept or reject a joint sentence recommendation." *State v. Robinson*, 33,921, p. 2 (La.App. 2 Cir. 11/1/00), 770 So.2d 868, 870.

In *Robinson*, 770 So.2d at 871, the second circuit discussed the distinction between an "agreed upon plea" and an "agreed upon sentence." The defendant therein agreed to plead guilty to two counts of simple burglary, a lesser crime than the original charge. The state recommended the sentences be served concurrently, but that was not noted in the written plea agreement. When the defendant complained that he did not receive the agreed upon sentence, the second circuit noted that there was only an agreement for the state to make a particular recommendation, not an agreement to a particular sentence, and it affirmed the sentence. Likewise, in *State v. Higginbotham*, 03-49 (La.App. 3 Cir. 4/30/03), 843 So.2d 1230, the state recommended that the defendant's sentences run concurrently. Because the plea agreement contained an "agreed upon plea" and

11

not an "agreed upon sentence," this court found the plea agreement was not breached when the trial court did not follow the sentencing recommendation.

In *State v. Guilbeau*, 10-511 (La.App. 3 Cir. 12/8/10), 52 So.3d 310, *writ denied*, 11-89 (La. 5/20/11), 63 So.3d 973, the defendant alleged that he entered into the plea agreement solely because he believed he would receive a concurrent five-year sentence. However, that was not a part of the plea agreement. This court noted that the trial court told the defendant that the sentence to which the state and his counsel agreed was only a recommendation, one it was not required to follow. The defendant said he understood and proceeded with his guilty plea. This court found the defendant's plea bargain was never based on an agreement that he would receive a five-year sentence; rather, it was based on the agreement that the state and defense counsel would jointly make that recommendation to the trial court. The promise to the defendant was fulfilled, and the trial court acted within its discretion in opting not to follow the sentencing recommendation. Accordingly, the defendant could not withdraw his plea simply because the sentence he received turned out to be more than the sentence he expected.

The defendant in the matter before us was advised of the rights he waived by a plea of no contest, the sentencing range for aggravated battery, and of the trial court's discretion to disregard the sentencing recommendation. The trial court found his plea to be knowing and voluntary based on the defendant's indication that he understood the matters explained to him.

We find that the defendant's plea was knowingly and voluntarily made under these facts. His plea bargain was never based on an agreement that he would receive a specific sentence; rather, it was based on the agreement that the state would make a sentencing recommendation to the trial court. The state fulfilled its

12

promise to the defendant, and the trial court acted within its discretion in choosing not to follow the sentencing recommendation. We find no merit in this assignment of error.

*Assignment of Error Number Two*

On the same day he was sentenced, the defendant filed two pro se motions with the trial court. One addressed his desire to have his trial attorney "recused" from his representation, and the other requested that he be allowed to withdraw his plea. In both motions, the complaints were the same: (1) the defendant's trial counsel was ineffective in that she refused to represent the defendant if he chose to go to trial; (2) his trial counsel coerced him into taking a plea; (3) his trial counsel was ineffective in that she returned his file after he entered a plea and stated she was glad to be rid of it; and (4) his trial counsel acted under a conflict of interest and failed to give him a copy of a statement as part of the original discovery.

At the beginning of the April 24, 2013 sentencing hearing, the trial court noted the defendant's motion to recuse his counsel, but did not mention the motion to withdraw the plea. When asked to address his complaints, the defendant asserted that the copy of discovery material provided him by his trial counsel after entering his pleas contained more pages than the original discovery material he had been provided, including statements of codefendants he had not previously seen. However, when further questioned by the trial court, he could not say whether the statements were helpful or hurtful to his case, and his complaint was simply that they were not present in the original discovery package provided to him. When asked whether he thought he might have a defense to the charge or charges, the defendant could only respond, "I'm just saying I just want everything to be fair, that's all." With regard to the defendant's complaint that his trial counsel was not

13

giving her best efforts because she was not being paid enough, all the defendant could do was refer to his motion and say, "It's all there."

The defendant's trial counsel then informed the trial court that she was a conflict counsel with the Calcasieu Parish Public Defender's office, and she handled this case and all others on a straight salary basis. That is to say, regardless of the number of cases assigned to her, she was paid the same amount per month. With regard to the discovery issue, the defendant's trial counsel informed the trial court that she became the defendant's counsel after initial extensive discovery had been provided to him, and, when she went through the discovery, she recognized that two pages were missing. She located the two pages and inserted them in her discovery file. After the defendant entered his pleas and before sentencing, she gave the defendant her copy of discovery for the singular reason that she no longer needed it. She suggested that the two missing pages were "interesting" but not "particularly significant" to the case. She concluded that the failure of the state to provide the two pages was a copying error and not intentional.

Following up on this information, the trial court had the following exchange with the defendant:

THE COURT:

I'm just going from recollection, but when I reviewed the charges at one time you had a couple of charges that carried with them life sentences that were taken or removed by the State in consideration for your pleas.

MR. BILLIOT:

Yes, sir.

THE COURT:

And you were number one on the docket that week to either go to trial or to resolve those matters. And, when the facts were given,

14

you stated before me that you admitted to those facts; and, now you are telling me you don't admit to those facts?

MR. BILLIOT:

I'm not stating nothing. I'm just trying to make everything fair. That's all.

The trial court then stated, "I don't find a valid reason for recusal."

On appeal, the defendant argues that the trial court erred in failing to rule on his motion to withdraw his plea. The state, on the other hand, asserts the defendant presented nothing to the trial court that would provide a basis for the withdrawal of his plea.

We agree with the state's position. The issues raised in both motions were exactly the same, and we find that the trial court impliedly denied the motion to withdraw the no-contest plea when it denied the motion to recuse counsel. To rule otherwise and remand for an express ruling on that motion would be an exercise in futility.

## DISPOSITION

For the foregoing reasons, we affirm the defendant's conviction and sentence in all respects.

**AFFIRMED.**